**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAFFEYELL MOODY | |
| Appellant | No. 3232 EDA 2012 |

Appeal from the Judgment of Sentence October 24, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009394-2010

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED October 5, 2016**

Appellant, Raffeyell Moody, appeals from the judgment of sentence entered on October 24, 2012.  On this direct appeal, Appellant's court-appointed counsel filed both a petition to withdraw as counsel and an accompanying brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967) and **_Commonwealth v. Santiago_**, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel complied with the procedural requirements necessary to affect withdrawal.  Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous.  We, therefore, grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Appellant's convictions arose from events that occurred on March 31, 2010.  The night before, Appellant had a series of verbal and physical

---

*Former Justice specially assigned to the Superior Court.

altercations with two brothers in his ex-girlfriend's house, which continued through to the next morning. Appellant later returned with a handgun, shooting both men in the abdomen, seriously injuring them, before one of the men disarmed Appellant and forced Appellant to flee the house. Both victims required emergency surgery. One sustained permanent injuries that may cause loss of organ function throughout life, requiring additional surgery.

On June 15, 2012, a jury convicted Appellant of two counts of aggravated assault, one count of carrying a firearm without a license, and one count of possessing an instrument of crime.[1] On October 24, 2012, the trial court sentenced Appellant to serve an aggregate term of 23½ to 47 years in prison, followed by five years of probation, for his convictions. Appellant's aggregate sentence consisted of two consecutive 10 to 20 year terms of imprisonment for his aggravated assault convictions. These particular sentences fell within the standard sentencing guideline ranges, after the trial court considered the "deadly weapon enhancement" provision of the sentencing guidelines. *See* N.T. Sentencing, 10/24/12, at 5; 204 Pa.Code § 303.10. Appellant did not file a post-sentence motion; however, Appellant filed a timely notice of appeal to this Court.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 6106(a)(1), and 907(a), respectively.

On appeal, Appellant's court-appointed counsel filed a petition for leave to withdraw and accompanied this petition with an **Anders** brief. Counsel's **Anders** brief raises three potential appellate claims (all of which counsel deemed to be frivolous): 1) the evidence was insufficient to support Appellant's convictions; 2) the verdict was against the weight of the evidence; and, 3) the trial court abused its discretion in sentencing Appellant to an excessive aggregate term of incarceration. **See Anders** Brief at 16. Moreover, Appellant filed a timely, *pro se* response to counsel's petition for leave to withdraw and, within Appellant's *pro se* response, Appellant contends that he was sentenced to unconstitutional mandatory minimum terms of incarceration under 42 Pa.C.S.A. § 9712, and that his sentence is thus illegal under **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013).

Before reviewing the merits of this appeal, this Court must first determine whether appointed counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. **Commonwealth v. Miller**, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under **Anders**, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." **Miller**, 715 A.2d at 1207. Second, counsel must file an **Anders** brief, in which counsel:

(1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5. It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel has met all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Before analyzing the issues presented in the *Anders* brief, we will review Appellant's challenge to the

legality of his sentence, which he raises in his response to counsel's petition to withdraw.

Appellant raises a single claim for relief:

> 4) Appellant is currently sentenced under the Mandatory Minimum Sentencing Statute, [42 Pa.C.S.A. § 9712] (sentences for offenses committed with firearms) where multiple procedural provisions within the statute are facially unconstitutional pursuant to [**Alleyne**, 133 S.Ct. at 2151], and cannot properly be severed from the remaining statute (now repealed), thereby rendering application in [Appellant's] case of the mandatory minimum sentence of 10 to 20 years incarceration under this statute unconstitutional
>
> 5) As this Court is well aware, the now repealed mandatory minimum sentencing statute, [42 Pa.C.S.A. § 9712] [regarding] sentences for offenses committed with firearms has been declared void and unenforceable.
>
> 6) In light of the constitutional pronouncement in **Alleyne**, our courts systematically have been declaring unconstitutional Pennsylvania's mandatory minimum sentencing statutes that permit a trial court rather than a jury, to make critical factual findings at sentencing. [string citation omitted].

Appellant's Response to Counsel's Petition to Withdraw, 4/29/16, at 1-2.

In **Apprendi v. New Jersey**, 530 U.S. 466 (2000), the United States Supreme Court held: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." **Apprendi**, 530 U.S. at 489. Further, in **Alleyne**, the United States Supreme Court expanded "**Apprendi's** basic jury-determination rule to mandatory minimum sentences." **Alleyne**, ___ U.S. at ___, 133 S.Ct. at

2167 (Breyer, J., concurring). Specifically, the **Alleyne** court held that, where an "aggravating fact" increases a mandatory minimum sentence, "the fact is an element of a distinct and aggravated crime. [The fact] must, therefore, be submitted to the jury and found beyond a reasonable doubt." **Alleyne**, 133 S.Ct. at 2162-2163. As this Court held, **Alleyne** rendered 42 Pa.C.S.A. § 9712 wholly unconstitutional. **Commonwealth v. Valentine**, 101 A.3d 801, 812 (Pa. Super. 2014).

> **Alleyne** challenges implicate the legality of a sentence. A challenge to the legality of a sentence may be entertained as long as the reviewing court has jurisdiction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law. Our standard of review over such questions is *de novo* and our scope of review is plenary.

**Commonwealth v. Ali**, 112 A.3d 1210, 1225 (Pa. Super. 2015) (internal citations, quotations, and corrections omitted), *appeal pending on other grounds*, 127 A.3d 1286 (Pa. 2015). Challenges to the legality of a sentence are non-waivable. **Commonwealth v. Leverette**, 911 A.2d 998, 1002 (Pa. Super. 2006).

In the present case, Appellant failed to present a claim meriting relief under **Alleyne** because the trial court did not sentence Appellant under Section 9712.

At the time, for the trial court to have sentenced Appellant to a mandatory minimum term under Section 9712, the Commonwealth was required to: give Appellant reasonable notice that it intended to proceed

under Section 9712; demand that the trial court sentence Appellant to the mandatory sentencing term; and, demonstrate to the trial court, by a preponderance of the evidence, that the sentencing provision was applicable to the case. 42 Pa.C.S.A. § 9712; *Valentine*, 101 A.3d at 809. The record reveals that the Commonwealth never provided Appellant with notice that it intended to seek a mandatory minimum term of incarceration or requested that the trial court impose upon Appellant a mandatory minimum sentence under Section 9712. To be sure, at the sentencing hearing, the Commonwealth repeatedly asked the court to apply the "deadly weapon enhancement" – found in the sentencing guidelines – to sentence Appellant. N.T. Sentencing, 10/24/12, at 5, 7-8, and 24; 204 Pa.Code § 303.10; *see also Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014) (*en banc*) (holding that the "deadly weapon enhancement," found at 204 Pa.Code § 303.10, is not unconstitutional under either *Alleyne* or *Apprendi*).

As there is no evidence that the trial court sentenced Appellant under the now constitutionally infirm sentencing statute (indeed all of the evidence demonstrates that Appellant was sentenced to a standard range sentence, after application of the "deadly weapon enhancement"), Appellant's claim on appeal warrants no relief.

We now review the claims raised within the *Anders* brief:

1) The evidence was insufficient to support the charges;

2) The verdicts were against the weight of the evidence;

- 7 -

3) The trial court committed an abuse of discretion by imposing a sentence of [23 ½ to 47] years['] incarceration on Appellant.

*Anders* Brief at 16 (capitalization altered from original).

Appellant first claims that the evidence was insufficient to support his convictions for aggravated assault, carrying a firearm without a license, and possessing an instrument of crime. *Anders* Brief at 16. This claim is frivolous.

We review a challenge to evidentiary sufficiency as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-06 (Pa. Super. 2008).

The Pennsylvania Crimes Code defines aggravated assault, in relevant part, as follows:

> (a) A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).  The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

The trial court aptly summarized the evidence produced by at trial:

> The Commonwealth presented the testimony of Courtney Henry. . . .  Ms. Henry [testified] that she and [victim, Brian] Buelah ran downstairs after hearing a lot of commotion.  At that time, she testified[,] she saw [] Appellant inside her home engaged in an argument and possible fight with Shawn McKinnon.  After Brian Buelah broke up the fight, Ms. Henry [testified] that [] Appellant, who appeared to be highly upset, made a threat to Mr. McKinnon's life before leaving her home.  A short time later, Ms. Henry testified that [] Appellant returned to her home.  Upon seeing [] Appellant reach for the back of his pants, Ms. Henry, fearing that he was armed, ran for cover in her basement door corridor.  Less than a minute later, Ms. Henry's fear was confirmed when she heard [four or five] gunshots followed by screaming from either Mr. Buelah or Mr. McKinnon.

Brian Buelah testified that, on the morning of [March] 31, 2010, he was upstairs with Ms. Henry at her home. After hearing rumbling, Mr. Buelah testified that he went downstairs whereupon he saw [] Appellant standing over his brother, Shawn McKinnon. After seeing them wrestling or fighting, Mr. Buelah stated that he pulled [] Appellant off of his brother after which [] Appellant left the home. Mr. Buelah testified that [] Appellant returned about a minute later with a gun. Mr. Buelah further testified that [] Appellant approached him and shot him in the stomach. According to Mr. Buelah, [] Appellant then raised his gun and shot his brother, Shawn McKinnon. Mr. Buelah stated that he then was able to wrestle the gun away from [] Appellant. He then testified that he saw his brother [lying] on the floor. Mr. Buelah stated that he and his brother got into his Jeep and drove to the hospital. Mr. Buelah testified that he still had the gun taken from [] Appellant[,] which he put into his Jeep.

. . .

Detective Dom Suchinsky testified that he was assigned to investigate the shooting of March 31, 2012. On that date[,] he prepared and executed a search warrant for the Isuzu Rodeo Jeep [driven by Mr. Buelah, with Mr. McKinnon, to the hospital] and recovered a .38 caliber Taurus revolver underneath the rear passenger seat. Finally, Detective Suchinsky testified that he presented both Brian Buelah and Shawn McKinnon with photo arrays from which both males made a positive identification of [] Appellant as the person who shot them.

The Commonwealth also presented testimony from Doctor Jay James Strain, an expert in the field of trauma surgery and critical care surgery. On March 31, 2010, Dr. Strain was working as the chief surgical attendant at Albert Einstein Medical Center where he recalled Brian Buelah and Shawn McKinnon coming into the emergency room with gunshot wounds. Dr. Strain stated that Shawn McKinnon had a gunshot wound that went from his lower left abdomen, about 2 inches above belt level, and exited through his buttocks. Because the nature of his condition caused concern for injury to his internal organs, exploratory surgery was performed. Dr. Strain testified that the surgery

revealed that the bullet went approximately half an inch between two major vascular structures. Dr. Strain explained that if the bullet had gone a half an inch to the right, it would [] have led to either death or severe disability. Dr. Strain further testified that an examination of Brian Buelah revealed an entry point in the same location of the abdomen. Unfortunately[,] the bullet struck and completely transected a major vessel which provides a huge amount of blood supply to the central abdomen and lower pelvis. Dr. Strain stated that emergency surgery was needed to be performed on Mr. Buelah to repair his artery, bowel, and bladder. Dr. Strain explained that he performed "damage control surgery" on Mr. Buelah after which he was left with only 50% of the blood vessels which are responsible for providing most of the blood supply to the central abdomen. Finally, Dr. Strain testified that Mr. Buelah had a lifetime risk of having pain and difficulty walking, risk of impotence and loss of [penile] function. Also, Mr. Buelah had a lifetime, one in four, chance of requiring further surgery to his bowel.

Trial Court Opinion, 12/27/13, at 2-5 (internal citations omitted).

Applying the standard articulated in **Brown**, the evidence is clearly sufficient to sustain Appellant's two convictions for aggravated assault. The evidence shows that Appellant specifically intended to cause two injuries that created a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of a bodily function or organ. **See** 18 Pa.C.S.A. § 2702(a)(1); 18 Pa.C.S.A. § 2301. Use of a deadly weapon against another evinces a specific intent to commit serious bodily injury. **See, e.g., Commonwealth v. Galindes**, 786 A.2d 1004, 1012 (Pa. Super. 2001) (the circumstances, plus the act of firing a weapon toward another person, shows the intent to cause serious bodily injury). The testimony of Mr. Buelah, Mr. McKinnon, and Ms. Henry, if credited by the jury, is sufficient

- 11 -

to identify Appellant as the assailant and to establish that he shot both victims. The testimony of Dr. Strain is sufficient to show that the bullet wounds posed a substantial risk of death and loss of bodily function to both men. Viewed in the light most favorable to the Commonwealth, the evidence is unquestionably sufficient to sustain Appellant's conviction for both counts of aggravated assault. *See Brown*, 23 A.3d at 559-60. Appellant's claim is frivolous.

We now turn to the evidence supporting Appellant's convictions for carrying a firearm without a license and possessing an instrument of crime.[2]

The Crimes Code defines the offense of carrying a firearm without a license as follows:

> Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

The Commonwealth sufficiently established that Appellant carried a firearm on his person without a license. First, the Commonwealth produced a certificate of non-licensure for Appellant. N.T. Trial, 6/13/12, at 55. The testimony of Mr. Buelah and Mr. McKinnon, identifying Appellant as the

_____

[2] We note that appointed counsel does not address the evidentiary sufficiency of these convictions in his *Anders* brief. *See Anders* Brief at 17-18.

person who shot them, together with Ms. Henry's testimony wherein she recalled Appellant reaching for what appeared to be a handgun inside his pants, is sufficient to place the weapon in his possession. *See* *Commonwealth v. Priest*, 18 A.3d 1235, 1239-1240 (Pa. Super. 2011).

Regarding Appellant's conviction for possession of an instrument of crime, "our Supreme Court has long held that an appellant's use of a loaded gun on his victim[s] is more than sufficient to establish his guilt of possession of an instrument of crime." *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (citing 18 Pa.C.S.A. § 907(a)). The testimony of the witnesses, viewed in the light most favorable to the Commonwealth, shows that Appellant fired a handgun at Mr. Buelah and Mr. McKinnon; as such, Appellant's claim of evidentiary insufficiency is frivolous.

We now approach Appellant's challenges to the weight of the evidence and to the discretionary aspects of his sentence. Both issues are waived.

An appellant must preserve his or her weight of the evidence claim by raising an objection before the trial court. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009); Pa.R.Crim.P. 607(a). One may not raise a challenge to the weight of the evidence for the first time on appeal. *Sherwood*, 982 A.2d at 494.

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion. The purpose of this rule is to make it clear that a challenge to the weight

> of the evidence must be raised with the trial judge or it will be waived.

***Id.*** at 494 n.22.

Appellant did not orally challenge the weight of the evidence to the trial court and Appellant did not file a post-sentence motion. Therefore, Appellant has waived any such attack on the judgment of sentence.

Similarly, review of the discretionary aspects of a sentence is not automatic. ***Commonwealth v. Wright***, 832 A.2d 1104, 1107 (Pa. Super. 2003). An appellant waives a discretionary aspect of sentencing claim by failing to file a post-sentence motion or orally presenting the claim to the trial court during the sentencing proceedings. ***Commonwealth v. Shugars***, 895 A.2d 1270, 1274 (Pa. Super. 2006). If either of these is not done, we may not consider the issue on appeal. ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005).

Appellant filed no post-sentence motions. Our review of the transcript of the sentencing proceedings shows that Appellant made no oral objections to the discretionary aspects of his sentence. Therefore, Appellant's claim is waived.

We have independently considered the issues raised within Appellant's brief and Appellant's response to appointed counsel's petition to withdraw, and we have determined that they are either frivolous or waived. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly

frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw appearance.

Petition to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2016